COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| GEORGE TOLBERT, | | No. 08-10-00096-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | County Criminal Court No. 10 |
| | § | |
| THE STATE OF TEXAS, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC# 1174123) |
| | § | |

**O P I N I O N**

George Tolbert appeals his conviction for evading arrest or detention. A jury rendered a guilty verdict and Appellant was sentenced by the trial court to serve 90 days in the Tarrant County jail. On appeal, Appellant challenges the legal sufficiency of evidence supporting the conviction, and contends that the trial court erred by overruling Appellant's *Batson* objection during jury selection.

On September 13, 2009, Officer Noel Oglesby responded to a disturbance call at the Tarrant County Welfare Office. When he arrived at the office, he witnessed a male and female arguing very loudly. Nearby, a security officer was waiting with several other individuals, including Appellant. The officer noticed that Appellant matched the description he was given when he was dispatched to the disturbance. In an attempt to calm the situation down, Officer Oglesby, now assisted by two other officers, began talking with all the individuals present.[1] As

---

[1] All three officers were in full uniform.

Officer Oglesby tried to converse with several women who had witnesses the disturbance, Appellant became agitated, interjecting himself into the officer's conversations, speaking loudly.

Because Appellant refused to calm down, Officer Oglesby asked another officer, Officer Johnston, to take him aside and begin to take down his information. Before Officer Johnston could begin talking with Appellant, he started to walk away, cursing loudly. Officer Johnston asked Appellant to stop and indicated that he needed to speak with Appellant. Appellant continued to walk away, and Officer Johnston followed him. Officer Johnston instructed Appellant to stop three times, and each time Appellant replied by telling the officer he did not have to stop, and by yelling profanities back at the officer. To keep Appellant from leaving, Officer Johnston was forced to try and grab Appellant's arm. Appellant brushed the officer off and continued to try to leave the scene. At this point, Officer Johnston moved to physically detain Appellant by grabbing both his hands and placing him against a wall. When the officer moved Appellant toward the wall, Appellant used a foot to push himself away, back into the middle of the hallway. With Appellant's left arm still in his hand, Officer Johnston forced Appellant to the ground, falling on top of him.[2] Officer Johnston arrested Appellant for resisting arrest. Later, Appellant was charged with evading arrest. According to Officer Johnston, Appellant both evaded and resisted his attempts to detain and arrest him.

Appellant testified in his own defense at trial. According to Appellant, the disturbance at the welfare office was the result of the tumultuous relationship between himself and his children's maternal grandmother. When he entered the office, he went to hug his son and

---

[2] Appellant suffered a cut above his right eye when he and the officer fell. Officer Johnston transported Appellant to the hospital where the cut was treated. Appellant was immediately released back into the officer's custody.

daughter who were there with their mother. As he did so, he noticed a childhood friend standing nearby. He proceeded to take his son with him as he went to take care of some other business in another office in the welfare building. As he walked away from their mother, he noticed the children's maternal grandmother was also heading toward the same office. Appellant testified that he asked the children's grandmother if he could take his son with him, and that she indicated she did not care. While he was attending to his business in the other office, Appellant testified that a security guard approached him and told him that a woman was claiming that he took his son by force. Appellant returned to the welfare office, where the children's grandmother was loudly accusing him of taking the child by force. According to Appellant, "at the time she was getting loud . . .," he saw police officers coming toward them.

Agitated by the situation, he testified that he told the officers that he had a witness and walked away from the officers to find the friend he had seen in the office earlier. Appellant told the jury that he was not trying to get away from the officers, only to find his friend who could explain that he did not forcibly take his son. In hindsight, he explained he understood that he should have stopped for the officers, and wished he had handled the situation differently. Appellant admitted that he heard the officer tell him to stop, and felt the officer try to grab his arm, but he denied brushing the officer off. He testified that the officer grabbed him forcefully, and pulled him causing Appellant to jerk his arm away instinctively. Again, he insisted that he told the officer he needed to go get his witness, and testified that the officers were lying when they testified that they never heard him say anything about a witness, that much of the situation had been "fabricated" and "switched up" by the officers and the children's grandmother. He theorized that the officers testified the way they did to cover up the fact that he was, "body

-3-

slammed to the ground," and suffered a, "busted head," after he tried to prevent an officer from running him into a wall.

Appellant was charged by information with the offense of evading arrest, enhanced by a prior assault conviction, on September 25, 2009. The case came to trial on January 4, 2010, where Appellant plead "not guilty" and was convicted by a jury. Pursuant to Appellant's election, he was sentenced by the trial court to ninety days in the Tarrant County Jail. Appellant raises two issues on appeal. In Issue One, he contends the evidence is legally insufficient to support the conviction. In Issue Two, he argues the trial court erred by overruling defense counsel's *Batson* challenge during voire dire.

A legal sufficiency review requires the appellate court to determine whether, "[c]onsidering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt." *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 3789, 61 L.Ed.2d 560 (1979). When conducting such a review, this Court is required to defer to the fact finder's role as the sole judge of witness credibility, and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. An individual commits the offense of evading arrest if he intentionally flees from a person he knows is a peace officer lawfully attempting to detain or arrest him. *See* TEX.PEN.CODE ANN. § 38.04(a)(West 2011).

Appellant's argument in Issue One is two-fold. First, he summarily concludes that the evidence is insufficient to sustain the finding that the detention was lawful. Second, Appellant argues there is no evidence from which the fact finder could conclude he fled within the meaning of the Penal Code because Officer Johnston apprehended Appellant before he "actually ran from

the scene." We will address each argument in turn.

During an investigative detention, an officer is authorized to temporarily detain an individual for investigative purposes when the officer has reasonable suspicion that the individual could be involved in some type of criminal activity. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). Investigative detentions are justified when, after considering the totality of the situation, the detaining officer has specific articulable facts which, when taken together with rational inferences from those facts, lead him to determine that the person detained actually is, has been, or soon will be engaged in criminal activity. *Balentine*, 71 S.W.3d at 768. The controlling question is whether the actions of the officer would have made a reasonable person feel that he, "was not free to decline the officer's request or otherwise terminate the encounter." *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.Crim.App. 1999). Consensual encounters can become investigative detentions if the officer conveys an indication that compliance is mandatory. *Velasquez*, 994 S.W.2d at 679.

In this case, viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's determination that Officer Johnston's detention of Appellant was lawful. Officer Oglesby testified Appellant matched the description of the individual causing the disturbance at the welfare office. Both Officer Oglesby and Officer Johnston testified that Appellant verbally refused to cooperate with their investigation. Officer Johnston testified that Appellant ignored his instructions to stop three times, resisted the officer's attempts to physically restrain Appellant twice, and forced the officer to resort to putting Appellant on the ground to secure Appellant's presence. Based on the officers' testimony, and without interfering with the jury's role as the judge of witness credibility and the weight to be

attributed to testimony, the jury was rationally justified in determining the detention was lawful. *See Brooks*, 323 S.W.3d at 899. That is, the evidence is sufficient to support the jury's conclusion that under the circumstances, Officer Johnston had reason to believe that Appellant had been or would soon be involved in criminal activity. With regard to Appellant's first argument, Issue One is overruled.

Similarly, the evidence is sufficient to support the jury's conclusion that Appellant intentionally attempted to flee the scene. As we have already discussed, as the sole judge of credibility and the weight to be attributed to witness testimony, we cannot interfere with the jury's decision to discount Appellant's explanation that he was leaving the scene to go find a witness, nor can we discount the jury's decision to disregard Appellant's statements that he did not believe he was required to submit to the officers' instructions. *See id*.

With regard to Appellant's argument that there is no evidence that he was fleeing withing the meaning of the Penal Code, we also disagree. It is well settled that anything less than "prompt compliance with an officer's direction to stop," falls within the bounds of "fleeing" for the purposes of evading arrest. *See Horne v. State*, 228 S.W.3d 442, 446 (Tex.App.--Texarkana 2007, no pet.). Both officers testified that Appellant was instructed to stop, multiple times. In addition, Appellant himself admitted that he heard one of the officers instruct him to stop. Again, viewing the evidence in the light most favorable to the verdict, we conclude the jury was rationally justified in determining, beyond a reasonable doubt, that Appellant intended to flee the officers. We overrule the remainder of Issue One.

In Issue Two Appellant contends the trial court erred by overruling defense counsel's objection under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), during

voir dire. Review of a court's ruling in response to a *Batson* objection requires a three part analysis. *See Williams v. State*, 301 S.W.3d 675, 688 (Tex.Crim.App. 2009). A defendant objecting under *Batson* must first make a prima facie showing that the State has exercised its peremptory strikes in a manner that constituted racial discrimination. *Williams*, 301 S.W.3d at 688. The burden then shifts to the State to articulate race-neutral explanations for its strikes. *Herron v. State*, 86 S.W.3d 621, 630 (Tex.Crim.App. 2002). The burden then shifts back to the objecting party to rebut the State's explanation. *Herron*, 86 S.W.3d at 630. Failure to offer a rebuttal argument can be fatal to the objecting party's claim. *Johnson v. State*, 68 S.W.3d 644, 649 (Tex.Crim.App. 2002). The trial court must then determine whether the objecting party has proven purposeful discrimination by the State. *Id*. Because the trial court's ruling turns, in large part, on a credibility evaluation, the reviewing court will give the trial court's decision great deference, and will not disturb the ruling unless it is clearly erroneous. *Id*.

In this instance, Appellant lodged a *Batson* objection to the State's use of a peremptory strike against "Juror 1." Appellant argued that Juror 1 was the only African American member of the panel, and that the State's decision to strike her was racially motivated. The State responded by explaining that Juror 1indicated that she would need "proof to a hundred percent certainty" to convict, and seemed confused by the prosecutor's questions. The trial court immediately overruled Appellant's objection and began to seat the jury. Appellant never attempted to rebut the State's explanation for its strike. Based on this record, Appellant failed to carry his burden to prove purposeful discrimination, and the trial court's ruling was not clearly erroneous. *See Chamberlain v. State*, 998 S.W.2d 230, 236 (Tex.Crim.App. 1999), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000). Issue Two is overruled.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.


August 26, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)